BRUNET, SÁENZ & CO., LTD., PLAINTIFFS AND APPELLANTS, *v.* APONTE ET AL., DEFENDANTS AND APPELLEES.

APPEAL from the District Court of Guayama in an Action of Debt.

No. 3268.—Decided July 12, 1924.

SURETY—ACCOUNT CURRENT.—The sureties guaranteed an account current of the debtor up to the sum of $5,000 for one year. The account amounted to $10,525.65 and the sureties were sued for the balance of $4,362.65. *Held:* That the account current should be divided as regards the security and the payments made by the debtor in the course of business during the year should be applied first to payment for the merchandise or money furnished by the creditor in the chronological order of the transactions up to the limit of the subsidiary obligation contracted by the sureties.

ID.—ID.—Interpreting the phrase contained in the bond to the effect that the sureties should answer for the debts "of whatever kind" that might be made by the principal, it was *held:* That as all matters having reference to security must be interpreted strictly, that phrase means that within the limit of their obligation the sureties could not question the nature or origin of the items or debts left unpaid by the principal; that is, whether they were for money or articles of commerce.

The facts are stated in the opinion.

*Mr. J. S. Alegría* for the appellant.

*Mr. C. Domínguez Rubio* for the appellees.

MR. JUSTICE FRANCO SOTO delivered the opinion of the court.

Brunet, Sáenz & Company brought an action against Ignacio Aponte, as principal debtor, and Juan de Dios Santini, Domingo Colón Ortiz, Longinos Mercado and Alfonso Rodríguez, as his sureties, to recover the sum of $4,362.65,

alleging in substance that defendant Ignacio Aponte asked the plaintiffs for a credit of $5,000 on an open account; that the said co-defendants agreed to become his sureties for the period of one year, promising in the agreement to pay any sum up to the amount of $5,000 that defendant Ignacio Aponte might fail to pay; that during the year covered by the security Aponte bought on credit from the plaintiffs goods to the value of $10,525.65, and that a liquidation of the current account showed a balance due of $4,362.65, the amount sued for in this action.

The sureties answered with a denial of certain allegations of the complaint and alleged as a defense that the security was given to respond for the goods that the plaintiff should furnish to the principal debtor; that during the year for which the security was limited the holder paid on account the sum of $4,467.65 in satisfaction of the oldest items of his account; that in a readjustment of his account up to the sum of $5,000 Aponte was allowed a reduction of $540.45 on the purchases and sales between him and the plaintiffs, and that the sums paid on account by the principal debtor more than covered the amount guaranteed by the sureties.

In sustaining the complaint in part as against the sureties the trial court adjudged that they should pay $426.35 on the ground that during the year covered by the security the plaintiffs sold to the principal debtor goods to the amount of $10,525.65, or more than twice the amount secured, and that as the debtor made partial payments during the stipulated period amounting to $4,573.65, this sum should be subtracted from the $5,000 secured which would leave a difference of $426.35 that the sureties should pay, instead of the $4,362.65 sued for by the plaintiffs as the balance of the current account.

The plaintiffs took the present appeal and assign the following errors:

"1.—The trial court erred in giving a restrictive interpretation to the security in this case, notwithstanding its broad and general language.

"2.—The trial court erred in holding that the security given by co-defendants Juan de Dios Santini, Domingo Colón Ortiz, Longinos Mercado and Alfonso Rodríguez did not cover the debit balance appearing from the liquidation of the current account of defendant Aponte with plaintiffs Brunet, Sáenz & Co., Ltd., at the end of the year.

"3.—The trial court erred in holding that the partial payments made by defendant Ignacio Aponte during the running of the account current extinguished the obligation of the co-defendant sureties, mistaking the meaning of the words *partial payment, payment and imputed payment.*"

Notwithstanding the number of errors assigned, the whole question in this case turns on the language and scope of the security in relation to the liability of the sureties.

The security is given in two letters which read as follows:

"Barranquitas, P. R.—July 27, 1921.—Messrs. Brunet, Sáenz & Co., San Juan, P. R.—Dear Sirs: We, the undersigned, become sureties for Ignacio Aponte up to the sum of five thousand dollars ($5,000) to respond for any claim that you may have against him for any reason.—We thank you in anticipation of your attention to this letter and remain, yours very truly, (Signed) Longinos Mercado.—D. Colón Ortiz.—J. D. Santini.—Alfonso Rodríguez."

"Barranquitas, July 31, 1921.—Messrs. Brunet, Sáenz & Co., San Juan, P. R.—Dear Sirs: We wish to advise you that the security that we gave in favor of Ignacio Aponte is understood to be only for one year from the date it was given.—We remain, yours very truly, (Signed) J. D. Santini.—D. Colón Ortiz.—Longinos Mercado.—Alfonso Rodríguez."

It follows from the language of these letters that the security was express and that the liability of the sureties was therein limited as to time and as to the amount secured. It could not be extended for a longer time or exceed the limit of $5,000 without the consent of the sureties. However, the principal obligation of the debtor exceeded the $5,000 secured, inasmuch as during the year the plaintiffs

supplied defendant Aponte with goods to the value of
$10,525.65, or more than twice the amount of the security.
As this fact is not controverted by either of the parties, the
question becomes one of law concerning the applicability of
section 1728 of the Civil Code, which provides that security
is not presumed, but must be express and can not be ex-
tended further than that specified therein. In connection
with the purpose of this statute, we agree with the reason-
ing and citations contained in the opinion of the trial court,
as follows:

"The Supreme Court of Spain, in its judgment of November
16, 1900, also laid down the ground of that statute, saying that 'for
the very reason that security is a special obligation *which is not
presumed*, it is necessary that the obligations assumed by the surety
or the limits of the security be made to appear.' Not only this
judgment, but others of May 29, 1897, and January 24, 1901, sanc-
tioned the rule established in the section under examination, raising
it to the plane of an undisputable principle of law applicable both
to civil and mercantile security. It was held unanimously in the
said judgments that it is a principle of law expressly sanctioned by
section 1827 of the Civil Code that security is not presumed, but
must be express and cannot be extended beyond the terms in which
it is expressed, and this is applicable to mercantile security by virtue
of the provisions of section 50 of the Code of Commerce. Further-
more, the said judgment of November 16, 1900, adds that as the se-
curity contract is gratuitous, it must be interpreted, when there is
doubt as to its extent, as importing the least transfer of rights, in
accordance with section 1289 of the Civil Code in connection with
section 441 of the Code of Commerce. This statement of the ju-
risprudence reaffirms clearly and explicitly the holding repeatedly
made that all matters relative to security must be interpreted strictly
and even restrictedly, this being the legal reason for the second of
the provisions which we have said are contained in subdivision 1 of
the section that we are examining, which provision is so much in
harmony with the nature of the contract that without the limita-
tion therein contained the security would become a new and distinct
agreement apart from its real purpose. Manresa, volume 12, pp.
234–235.—In the present case and as expressly stated in the com-
plaint, the security was given to secure a credit of $5,000 asked for

by defendant Aponte, and that being the case, it is clear that the security, which is an obligation subsidiary to the principal obligation, can not be extended to secure a greater amount than the principal sum secured.—(Section 1728 of the Civil Code.) 'We have already shown the reason for this rule in commenting on the preceding section; therefore, it will suffice to say that as the security is an accessory obligation, it can not reach beyond the limits of the principal obligation thereby secured, for as to any excess the obligation on which it depends or of which it is accessory will be lacking.' Manresa, volume 12, page 234. Therefore, we are of the opinion that the defendant sureties are liable only for a credit of $5,000, and that as the plaintiffs supplied goods to defendant Aponte for a greater sum, the security in no manner can cover the excess, for security can not be extended to secure a greater sum than that expressly stipulated."

The appellant, however, in his third assignment of error insists that the current account is an indivisible whole and its items lose their character to become mere entries in the debit or credit columns; or, in other words, that an account current is not demandable as to its balances, because the payments made while it is running can not be considered as satisfaction or be imputed to any item of the current account.

However, we are not discussing the inherent nature of an account current, but its effects as a principal obligation in relation to the liability of the sureties. If the security answered only for a credit of $5,000 and the creditor allowed credit to the principal debtor for a greater amount, it is natural that the account current should be divided as regards the security and the payments made by the debtor in the course of business during the time the security was in force should be applied first to payment for the merchandise or money by the creditor in the chronological order of the transactions up to the limit of the subsidiary obligation contracted by the sureties. This doctrine was laid down in a general way in the case of *Compañía Industrial de Santurce v. Sánchez,* 21 P.R.R. 178, 183, and more fully stated in the

case of *Succession of Valdés* v. *Acevedo,* 23 P.R.R. 684, 690, wherein this Supreme Court, by Mr. Justice Aldrey, said:

"Taking into consideration the obligations of Ufret and the guaranty of the appellant and bearing in mind the rules of law hereinbefore cited, we are forced to the conclusion that as to the money advanced, Acevedo guaranteed only the repayment of $800 with interest which under the contract was to be advanced to Ufret during the first year of the contract, for it is thus stated expressly in his contract of guaranty; and this amount was covered by his principal with the credit for $3,005.53 given him on February 6, 1912, for sugar cane delivered. That this is the correct construction is shown by the subsequent act of the central and Ufret in agreeing upon the amount to be advanced for financing the crop of 1912–13, therefore Acevedo did not guarantee the payment of the amounts advanced to his principal in excess of the $800. As regards the money advanced to his principal, the appellant expressly limited his guaranty to the sum of $800 and interest; therefore, he can not be held liable for other sums advanced which, on the other hand, cannot be considered as a consequence of the contract guaranteed by him; for although Ufret was under the obligation to grow and deliver sugar cane during the grinding seasons of 1912–13, it was not absolutely necessary that the central should advance more money than that expressly guaranteed by Acevedo to enable Ufret to fulfill that part of the contract.

"Hence, the obligation assumed by Acevedo was to guarantee the payment of $800, with interest, and that Ufret would comply with the other conditions of the contract. The generality of the terms of the guaranty in regard to the obligations of Ufret beyond that of returning the $800, does not support the conclusion that as a consequence a greater sum than that should be advanced to Ufret and that the guarantor is under obligation to pay the excess."

The appellant also alleged that the statement in the security that the sureties would answer for all claims that for any reason might be made against the principal debtor refers to any balance of the current account, although the volume of business within the year exceeded the limits of the security. However, as we have seen, it is a general rule of jurisprudence that all matters relating to security must be interpreted strictly, and those words could mean only

that within the limit of their obligation the sureties could not question the nature or origin of the items or debts left unpaid by the principal; that is, whether they were for money or articles of commerce.

For the foregoing reasons the judgment of the trial court must be

*Affirmed.*

Chief Justice Del Toro and Justices Aldrey and Hutchison concurred.

Mr. Justice Wolf took no part in the decision of this case.